# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION BURNETT,<br><br>             Plaintiff,<br><br>     v.<br><br>ABOYTES, et al.,<br><br>             Defendants.<br>_____/ | CASE NO. 1:02-cv-5041-AWI- DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Doc. 40) |

I.   Defendant's Motion for Summary Judgment

  A.   Procedural History

Plaintiff Marion Burnett ("plaintiff") is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed December 7, 2001, against defendant Aboytes (defendant") for retaliation.[1] On August 11, 2005, defendant filed the present motion for summary judgment. Plaintiff has not filed an opposition to the motion.[2]

  B.   Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.

---

[1] On July 30, 2002, the District Court adopted this Court's recommendation that this action proceed only on plaintiff's retaliation claim against defendant Aboytes, thereby dismissing all claims against the CDC, Cambra, Carey, Winett and Papac.

[2] Plaintiff was notified of the requirements for opposing a summary judgment motion on September 10, 2002.

Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    C.    Undisputed Facts

1. During the year 2000, defendant Aboytes was a correctional sergeant at the California Correctional Institution, (CCI) Tehachapi, California. Declaration of Aboytes, ¶ 1.
2. On August 28, 2000, defendant Aboytes issued a Rules Violation Report ("RVR") charging plaintiff with an attempted battery on a peace officer. Declaration of Aboytes, ¶ 2.
3. Plaintiff submitted an inmate appeal on August 16, 2000 alleging that on July 31, 2000, defendant Aboytes would not allow him to take a piece of fruit from the dining hall. The appeal was not assigned by the appeals coordinator until September 5, 2000. Certification of Gloria Perkins, Records Officer of the Department of Corrections, at 0003-0004.
4. On December 2, 2000, plaintiff submitted an inmate appeal, Log # CCI-03-00-02720

|   |   |   |
|---|---|---|
| 1 |  | complaining of defendant Aboytes' submission of falsified legal documents in connection |
| 2 |  | with the August 28, 2000 RVR. *Id.* at 0005-0010. |
| 3 | 5. | This appeal was consolidated with appeal Log No. CCI-03-00-1936, and both were denied |
| 4 |  | at the second level on April 12, 2001. *Id*. at 0011. |
| 5 | 6. | Plaintiff then submitted both appeals to the director's level, where a denial was issued |
| 6 |  | September 21, 2001. *Id*. at 0012-0014. |
| 7 | 7. | On January 23, 2002, plaintiff submitted an inmate appeal, Log No. CCI-01-02-00320, |
| 8 |  | complaining that he was denied a meal. *Id*. at 0015-0017. |
| 9 | 8. | Not satisfied with either the first or second level partial grants, he received February 15, 2002 |
| 10 |  | and April 23, 2002, respectively, plaintiff also submitted this appeal to the third level, where |
| 11 |  | it was denied July 10, 2002. *Id.* at 0018, 0028. |
| 12 | 9. | On April 10, 2003, plaintiff was transferred to the California Institution for men (CIM). *Id*. |
| 13 |  | at 0002. |
| 14 | 10. | Plaintiff submitted a reasonable accommodation appeal, Log No. CIM-M-03-0695, on May |
| 15 |  | 12, 2003. *Id*. at 0019-0023. |
| 16 | 11. | After denial at the first level, plaintiff appealed to the second level on June 19, 2003. *Id.* at |
| 17 |  | 0020. |
| 18 | 12. | Not satisfied with the second level response, plaintiff submitted his appeal to the third level |
| 19 |  | on August 1, 2003 and a denial was issued on August 28, 2003. *Id.* at 0024-0026. |
| 20 | 13. | Also, while at CIM, plaintiff submitted two separate property appeals, on April 22, 2003 and |
| 21 |  | May 19, 2003, respectively, neither of which were assigned appeal log numbers. *Id*, at 0027. |
| 22 | 14. | On three separate occasions, plaintiff submitted staff complaints to the third level, December |
| 23 |  | 6, 2000, April 30, 2001 and May 1, 2001, respectively, all of which were screened out. *Id.* |
| 24 |  | at 0029. |
| 25 | 15. | Defendant Aboytes states that she was not aware of the August 16, 2000 inmate appeal until |
| 26 |  | sometime after September 5, 2000 and she wrote the August 28, 2000, RVR because she |
| 27 |  | believed that plaintiff intentionally threw an orange at her and almost hit her. Declaration |
| 28 |  | of Aboytes,  ¶ ¶ 3 and 4. |

16. At that time, oranges were being used by inmates to make pruno, an illicit inmate manufactured alcoholic beverage. *Id.* at ¶ 5.

17. For this reason, oranges were being confiscated during the summer of 2000. *Id.* at ¶ 6.

18. While attempting to confiscate plaintiff's orange on August 28, 2000, he reacted in a way which defendant Aboytes believed threatened the safety and security of the institution. *Id.* at ¶¶ 7 and 8.

19. Defendant Aboytes issued the RVR for the purpose of preserving institutional order and discipline, thereby maintaining the safety and security of the institution. *Id.* at ¶ 9.

20. In his inmate appeal, plaintiff admits that when defendant Aboytes told him to get rid of the orange on August 16, 2000, he "tossed it down on the ground and it rolled in the direction of Sgt. Aboytes" but it was plaintiff's opinion that Sgt Aboytes was never in any danger. Certification of Gloria Perkins, Records Officer of the Department of Corrections, at 0003-0007.

D. Plaintiff's Allegations[3]

In his complaint, plaintiff alleges that on several dates, including July 31, 2000, August 1, 2000, August 15, 2000, and August 16, 2000, he attempted to take an orange with him from the dining hall, but defendant Aboytes told him to discard the orange each time. Plaintiff informed defendant Aboytes that pursuant to prison procedures, inmates are allowed to remove one whole piece of fresh fruit from the dining hall. Plaintiff also informed defendant Aboytes that he was an insulin-dependent diabetic and that he should be allowed to keep the orange for medical reasons.

Plaintiff alleges that on August 16, 2000, he submitted a 602 inmate appeal grievance against Aboytes for misconduct. Compl., p. 4. Plaintiff alleges that on August 28, 2000, Aboytes took retaliatory action against plaintiff for filing a grievance by submitting a false report that plaintiff threw an orange at her, and that she had to step aside to avoid being hit with the orange. Compl., p. 5. On August 28, 2000, plaintiff was placed in administrative segregation pending adjudication of

---

[3] A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

5

the disciplinary charge filed by defendant Aboytes. On October 6, 2000, plaintiff was found not guilty of the disciplinary charge of attempted battery on a peace officer (throwing an orange at defendant Aboytes). Compl., p. 6. Plaintiff was held in administrative segregation for 45 to 50 days pending the adjudication of the disciplinary charges brought against him by defendant Aboytes. (Compl., p. 6).

E. Discussion

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

On August 16, 2000, plaintiff filed an inmate appeal against defendant Aboytes; however the appeal was not assigned by the appeals coordinator until September 5, 2000. Undisputed Fact 3. On August 28, 2000, defendant Aboytes issued a RVR charging plaintiff with attempted battery on a peace office. Undisputed Fact 2. Defendant Aboytes states that she was not aware of the August 16, 2000 inmate appeal until sometime after September 5, 2000 and that she issued the August 28, 2000 RVR because she believed plaintiff intentionally threw an orange at her and almost hit her. Undisputed Fact 3 and 4.

Defendant argues that plaintiff has failed to meet his burden of showing that the retaliation for the exercise of protected conduct was the substantial or motivating factor behind her actions. Defendant argues that the "because of" element is not met here because the inmate appeal was not

1  assigned for response by the appeals coordinator until September 5, 2000 and defendant did not even
2  become aware of the inmate appeal until after she issued the RVR on August 28, 2000.  Further,
3  defendant argues that her RVR had no chilling or deterrent effect on plaintiff's continuing to exercise
4  his First Amendment rights, as evidenced by his continuing to file appeals.  Undisputed Fact 4, 7,
5  10, 13, 14.  Finally, defendant argues that the RVR was not retaliatory, but rather was based on a
6  legitimate penological need brought about by plaintiff's actions and defendant's belief that those
7  actions threatened the safety and security of the institution.  Undisputed Fact 16, 17 and 18.

8        Defendant has met her initial burden of informing the court of the basis for her motion, and
9  identifying those portions of the record which she believes demonstrate the absence of a genuine
10 issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue as to
11 any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
12 U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual
13 dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required
14 to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,
15 in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
16 First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

17       Filing prison grievances is a protected activity, see Rhodes, 408 F.3d at 567-68, and the
18 issuance of a Rules Violation Report, which can lead to a variety of punishments, is without question
19 an adverse action.  However, plaintiff has failed to demonstrate that defendant issued the RVR
20 because of his protected activity.  Defendant has presented evidence that the appeal was not assigned
21 until September 5, 2000, after the issuance of the RVR and plaintiff has failed to present any
22 evidence refuting this.

23       Plaintiff also bears the burden of proving "that there were no legitimate correctional purposes
24 motivating the actions he complains of." Pratt, 65 F.3d at 808.  Plaintiff's conclusory assertions in
25 his complaint that the RVR was false and that defendant issued it to retaliate against him are
26 insufficient to meet this burden.  In his inmate appeal, plaintiff admits that when defendant Aboytes
27 told him to get rid of the orange, he "tossed it down on the ground and it rolled in the direction of
28 Sgt. Aboytes" but it was his opinion that Sgt Aboytes was never in any danger.  Undisputed Fact 20.

Defendant believed that plaintiff intentionally threw the orange at her and that plaintiff's actions threatened the safety and security of the institution. Following this incident, defendant issued the RVR for attempted battery on a peace officer. Maintaining order is a legitimate correctional goal. When defendant attempted to confiscate the orange, plaintiff threw it in her direction. Plaintiff's conduct was at least arguably deserving of subsequent disciplinary action. The only alternative evidence on this point is plaintiff's self serving statement in his inmate appeal that defendant was never in any danger of being hit by the orange. Based on his subjective belief, plaintiff argues that the RVR was false and was issued against him because he filed an inmate appeal. In light of the plaintiff's admission that he "tossed" the orange in defendant's direction on the day in question and prior to the issuance of the RVR, his argument is insufficient to meet his burden of demonstrating that defendant's action did not serve a legitimate correctional goal. It is not enough for plaintiff to proffer an alternate theory behind the issuance the RVR. Plaintiff must submit evidence that the action did not reasonably advance a legitimate correctional goal. Plaintiff has not done so.

Further, plaintiff has not submitted any evidence that defendant's actions chilled the exercise of his First Amendment rights. At this stage in the action, plaintiff must present some evidence in support of his claim. Plaintiff may not simply rely on conclusory assertions in his complaint that his rights were chilled.[4]

In conclusion, the court finds that plaintiff has not submitted evidence raising any triable issues of fact with respect to his retaliation claim. Specifically, plaintiff has not submitted any evidence that the issuance of the RVR following the August 16, 2000 incident was in retaliation for his inmate appeal or that it did not reasonably advance a legitimate correctional goal. The fact that because plaintiff filed an inmate appeal prior to the issuance of the RVR, the timing is plausible to support retaliation claim is, alone, insufficient where it is also a fact that plaintiff engaged in conduct that defendant perceived as threatening prior to the issuance of the RVR. In addition, although plaintiff the issuance of the RVR was adverse to him, plaintiff has not submitted any evidence that he suffered a chilling effect. Accordingly, defendant is entitled to judgment as a matter of law on

---

[4] The pleading itself contains no such allegation.

plaintiff's retaliation claim.

### E. Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendant Aboytes' motion for summary judgment, filed August 11, 2005, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 14, 2006            **/s/ Dennis L. Beck**
3b142a                                            UNITED STATES MAGISTRATE JUDGE